```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                         ATHENS DIVISION
```

KATHRYN JONES, *individually and* *
*as the parent and legal*
*guardian of minor M.J.*,             *

    Plaintiff,                    *
                                                   CASE NO. 3:24-cv-87 (CDL)
vs.                                   *

STELLER INNOVATIONS, LLC,             *

    Defendant.                    *

---

## O R D E R

Kathryn Jones purchased hardwood flooring from Steller Innovations, LLC. After she had it installed in her home, she was not pleased with the results. She alleges that it buckled and had gaps which made it unsafe. Am. Compl. ¶ 18, ECF No. 1-1. She asserts claims in this action under Georgia law for breach of the implied warranties of fitness for a particular purpose and merchantability, claiming that the flooring was defective when sold. Having no direct evidence of defect, Jones relies upon "circumstantial evidence." The only "circumstances" she points to are her general conclusory contention that she and her husband followed the installation instructions and that the floor nevertheless buckled and had gaps. Then she summarily concludes that the buckling and gaps must have been caused by a defect in the flooring, but she does not identify the defect and has no idea

what caused it. Because she has not pointed to sufficient evidence from which a reasonable jury could conclude that the flooring was defective when sold to her, her claims for breach of implied warranties fail as a matter of law. Defendant's motion for summary judgment (ECF No. 19) is therefore granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Jones, the record reveals the following facts.

Plaintiff Kathryn Jones ("Jones") and her husband, Lawrence Jones ("Mr. Jones"), designed and built a home for their family. Jones, who was responsible for selecting finishes for the home,

2

contacted Defendant Steller Innovations, LLC about flooring. Steller manufactures and sells a "floating" hardwood flooring product for use in residences as well as retail and commercial spaces. Rather than using nails and glue, Steller's flooring is installed by "clicking" the floorboards into place with clips. This method of assembly allows the floorboards to be removed with a suction cup so that the user can clean underneath the boards, revise installation, and repair or replace individual boards as needed.

Steller flooring, like other wood products, is affected by moisture: higher levels of humidity, or moist environments, cause wood to expand, while lower levels of humidity, or dry environments, cause wood to contract. To ensure that hardwood flooring reaches a moisture equilibrium with its intended environment, it must be acclimated to the humidity level of that environment prior to installation. The installation process may also require that floorboards be trimmed and expansion gaps be left to account for future expansion of the wood as it acclimates. If these steps are not taken prior to installation, excess pressure created by the wood's expansion may cause floorboards to buckle, crack, or pop. Steller's Assembly Guide states that its floors "are made to match with the human comfort zone: humidity of 35% to 50%." Def.'s Mot. Summ. J. Ex. A, Assembly Guide 12 ("Assembly Guide"), ECF No. 19-2. To attain this desired environment, the

3

Guide recommends that customers use small humidifiers and dehumidifiers and warns that homes in very dry or very wet climates may require "long-term acclimation of flooring to room conditions." *Id.*

After trying a Steller flooring sample that performed to her satisfaction, Jones asked a Steller employee for guidance as to which of its products would best meet her needs. Jones communicated that she wanted flooring which could "cover large spans of rooms," "perform in [her] local climate in Athens, Georgia," "[lay] across two different subfloors," and "remain durable with pets and children." Jones Decl. ¶¶ 2-4, ECF No. 25-7. The employee recommended a Hard Maple Clear Hardwood Flooring product, which Jones ultimately purchased in November of 2021.

The flooring was delivered on March 28, 2022. Upon delivery, Jones opened the crate to ensure the pallets of flooring were present, but she did not further inspect the flooring product. Jones then stored the flooring in her neighbor's garage for approximately nine months, until December of 2022. The garage did not have temperature or humidity control. The flooring was next transported to Jones's home, where it was left to acclimate for approximately two weeks. Jones Dep. 57:25-59:2, ECF No. 22. During the acclimation process, Jones monitored and maintained the humidity level of her home within the 35-50% range recommended by Steller through use of a barometer and a "mini-split" HVAC system.

4

*Id.* at 59:24-60:12; 61:13-17; Jones Decl. ¶ 9. After the acclimation period, Mr. Jones and a sub-contractor, Nicholas Brand, installed the flooring. The installation was completed some time after the New Year in 2023, though it is unknown exactly how long the process took. Mr. Jones testified that he and Brand followed Steller's installation guide "to a T," including trimming the floorboards and leaving expansion gaps. Mr. Jones Dep. 69:14-20; 70:5-11; 75:24-25, ECF No. 23.

It is unclear when problems with the flooring began. Mr. Jones testified that issues arose immediately upon installation, *id.* at 72:22-25, whereas Jones herself testified that issues began approximately two weeks after the installation. Jones Dep. 80:22-25. Nevertheless, the troubles were numerous: floorboards were hard to "click" into the clip system; boards buckled, gapped, split, and popped or "explode[d]" out of the floor; and boards could not be reinserted or removed once installed. *Id.* at 81:1-6; Mr. Jones Dep. 68:5-6, 81:18-82:5.

After utilizing Steller's 800 helpline and website chatbot, Jones contacted Steller directly by email on March 3, 2023. Jones Dep. 135:6-9. Although she wrote that the floors "look[ed] AMAZING," Jones reported that she was unable to remove or replace individual floorboards with the provided suction cup, which had become damaged upon use. Def.'s Mot. Summ. J. Ex. F, March 3, 2023 Email from K. Jones 1-2, ECF No. 19-7. Jones also wrote that

5

the sample floorboards initially sent by Steller clicked "in and out with EASE" and that she noticed "small variations in width" of the purchased boards during installation. *Id.* at 2.  Jones did not mention any other issues such as buckling, gapping, or floorboards that popped out of place.

Steller Co-Founder Britta Teller replied to Jones's email the following day.  Teller advised that the issues Jones detailed were caused by humidity and outlined a plan for remediation.  She recommended that Jones first needed to "[g]et all of the flooring planks to relax and go back to their installed size using a dehumidifier for a short period."  Def.'s Mot. Summ. J. Ex. G, March 4, 2023 Email from B. Teller 2, ECF No. 19-8.  Jones sent an email in response stating that she would "grab a humidity reader ASAP."  Def.'s Mot. Summ. J. Ex. H, March 4, 2023 Email from K. Jones 1, ECF No. 19-9.  Jones borrowed a standalone dehumidifier to use during the remediation process, though she could not recall exactly when or for how long it was in use.  Jones. Dep. 91:8-17.  Mr. Jones testified that the mini-split HVAC system was adjusted to "dry mode" as part of remediation, though he similarly could not recall exactly when or how long the system ran on that setting.  Mr. Jones Dep. 58:14-22.

Jones followed up with Teller by email on March 18, stating that the humidity level in her home was "consistently in the 40% range," although it fluctuated to as low as 35% and as high as

6

52%.  Def.'s Mot. Summ. J. Ex. I, March 18, 2023 Email from K. Jones 1, ECF No. 19-10.  When Jones relayed that she was still unable to remove floorboards, Britta referred her to Steller Co-Founder Evan Stover.  During their conversations, Stover told Jones that acclimation takes time and reiterated prior remediation instructions.  Jones Dep. 97:1-3.  Stover also proposed sending a new suction cup or even repurchasing the flooring.  Jones Decl. ¶ 12.  Eventually, Stover advised Jones to stop dehumidification efforts so that Jones's home could acclimate to its natural climate.  Jones Dec. 96:1-7.  Accordingly, Jones emailed Stover and Teller on March 20, informing them that her home had naturally acclimated to between 52-57% humidity.

It is unknown whether any other communication took place before Jones emailed Steller on March 22 to request a refund, stating that the flooring was not a "good match with our extreme variation."  Def.'s Mot. Summ. J. Ex. L, March 22, 2023 Email from K. Jones 1, ECF No. 19-13.  Steller refused the refund, consistent with its express warranty that guarantees the workmanship of its products for only up to thirty days following delivery.  Assembly Guide 14.  Teller sent Jones an email on April 7, reiterating that Jones's problems with the flooring were due to humidity and advised Jones to either dehumidify her home so the floorboards could return to manufactured size or trim the boards to fit a higher humidity environment.  Def.'s Mot. Summ. J. Ex. K, Message from B. Teller

7

1, ECF No. 19-12.[1]  After receiving this email, Jones ceased remediation efforts.  Jones Dep. 99:4-9.  Jones subsequently brought this action against Steller, seeking damages for the breach of implied warranties under Georgia law and general damages on behalf of her minor child, who was injured when he tripped and fell on the flooring in Jones's home.

During discovery, Stover, Steller's expert witness, conducted a site inspection of Jones's home, where he observed that Steller's flooring was still in use in almost every room.  Stover concluded that the flooring was improperly installed.  Specifically, he opined that the wood was not properly acclimated to the home, the floorboards were not properly trimmed, and there were not sufficient expansion gaps left at the time of installation.  Stover also concluded that the flooring was not properly remediated or maintained.  Nevertheless, Stover believes that the flooring could still be remediated using the same plan Teller provided to Jones in her March 4, 2023 email.

DISCUSSION

Jones asserts claims for breach of implied warranties under O.C.G.A. §§ 11-2-314 and 11-2-315 and seeks reasonable attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11.[2]  Steller

---

[1] Although the exhibit submitted by Steller does not contain a date, Steller does not dispute Jones's assertion that Teller's email was sent on April 7, 2023.
[2] Steller brought a counterclaim against Jones for libel under Georgia law.

8

seeks summary judgment as to all of Jones's claims. The Court addresses each claim in turn.

## I. O.C.G.A. § 11-2-314: Implied Warranty of Merchantability

In Georgia, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." O.C.G.A. § 11-2-314(1). "To prove a breach of this implied warranty a plaintiff must show four elements: (1) that the goods were subject to the warranty; (2) that the goods were defective; (3) that the injury was caused by the defective goods; and (4) that damages were incurred as a result." *Mitchell v. BBB Servs. Co.*, 582 S.E.2d 470, 471–72 (Ga. Ct. App. 2003). It is undisputed that the flooring is subject to this implied warranty. Steller argues, however, that the flooring is not defective, and that the problems Jones experienced were solely attributable to Jones's improper installation, maintenance and remediation of the flooring. Steller relies in part upon expert testimony that is based on the expert's on-site inspection of the flooring.

Because the implied warranty "protects consumers from 'defects or conditions existing at the time of sale' . . . proof that the [product was] defective *when sold* is an essential element" of Jones's claim. *Simpson v. Hyundai Motor Am., Inc.*, 603 S.E.2d 723, 727 (Ga. Ct. App. 2004) (quoting *Jones v. Marcus*, 457 S.E.2d 271, 272 (Ga. Ct. App. 1995)). Jones presented no expert testimony

9

or other direct evidence that the flooring was defective when sold to her.[3]  Without direct evidence of defect, Jones attempts to create a genuine factual dispute with circumstantial evidence. She points to the following:

- Floorboards varied in width.  March 3, 2023 Email from K. Jones 2.

- Floorboards were difficult to "click" into place.  Mr. Jones Dep. 68:5-6.

- Floorboards buckled, gapped, split, and could not be removed with the provided suction cup.  Jones Dep. 81:1-6.

- Floorboards popped out of the floor and left behind gaps that were too small to fit a reinserted board.  Mr. Jones Dep. 81:18-82:5.

- Sample floorboards sent by Steller were easier to "click" into place and remove as compared to the purchased floorboards.  March 3, 2023 Email from K. Jones 2.

Steller's expert who examined the installed flooring opined that Jones did not properly acclimate the floorboards and did not trim the boards or leave expansion gaps.  Jones disputes this testimony, claiming that she maintained Steller's recommended humidity level and that Mr. Jones and Brand followed Steller's installation guide by trimming the floorboards and leaving expansion gaps.

---

[3] In some situations, "lay testimony can provide sufficient evidence of defect" without expert testimony, such as when a new vehicle "began operating with a loud rattling noise" and "the dealer was unable to repair it."  *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1319 (11th Cir. 2011) (discussing *McDonald v. Mazda Motors of Am.*, 603 S.E.2d 456, 461 (Ga. Ct. App. 2004)).  Jones still has the burden of pointing to *some* evidence, expert or otherwise, from which a reasonable jury could find that the flooring was defective when sold.

10

Jones is correct that she does not necessarily need direct or expert evidence to support her claims.  But if she pursues her claims based upon circumstantial evidence, she must point to circumstances from which a reasonable jury could conclude that a defect in the flooring caused it to buckle and gap after the installation.  The issue for determination at summary judgment is whether a reasonable jury could infer that the flooring was defective if it found Jones's testimony to be true, i.e., that she properly followed the manufacturer's instructions regarding installation of the flooring.

Without expert testimony or other direct evidence of defect, Jones must attempt to prove her claims with circumstantial evidence.  Her theory is simple:  she bought the product that Steller knew would be installed in Athens, Georgia (with its weather and climate conditions); she followed Steller's instructions for installation; and yet, the product buckled and had gaps notwithstanding the proper installation.  Therefore, the problems must be attributable to a defect in the flooring.

Circumstantial evidence can be as persuasive as direct evidence and is not automatically relegated to a lower status. But circumstantial evidence cannot simply support the *possibility* that the product was defective.  The evidence must be sufficient for a jury to reasonably infer that the defect was the cause of the injury.  One way to do that is to produce evidence of all

11

plausible causes of an injury and then eliminate each of those causes except for defect. From that evidence a reasonable jury can then infer that defect was the cause of the injury. Jones has failed to produce such evidence that eliminates all other plausible causes for her injury.[4] *See Graff v. Baja Marine Corp.*, 310 F. App'x 298, 306 (11th Cir. 2009) (circumstantial evidence of defect was insufficient when it did not establish that a defect was "the only plausible explanation for how [the product] broke"); *cf. Firestone Tire & Rubber Co. v. Hall*, 263 S.E.2d 449, 451 (Ga. Ct. App. 1979) (plaintiff could rely on circumstantial evidence to prove that a tire was defective when there was "no other reasonable explanation for the [tire's] blowout other than a defect").

Jones has not pointed to evidence from which a reasonable jury could determine the universe of plausible explanations for the problems with the flooring. Jones has only presented evidence disputing Steller's explanation that she failed to properly install or remediate the flooring. But this evidence only challenges that explanation and does not point to and eliminate any other plausible explanations for the buckling and gaps. Thus, the jury would be left to speculate as to whether buckling and gaps, even if the flooring was properly installed, were

---

[4] This differential-type analysis is typically performed by expert witnesses who have special expertise in identifying all plausible causes and then eliminating them. The Court assumes for purposes of the present motion that a lay witness can also present such evidence. The problem for Jones is that she has failed to do so.

attributable to defect or some other cause. *See Crews v. Tahsin Indus. Corp. USA*, No. 20-14078, 2022 WL 1567707, at *2 (11th Cir. May 18, 2022) (per curiam) (reasoning that plaintiff could not rely on circumstantial evidence to establish defect where that evidence did not preclude "other plausible explanations" for the product's failure). Steller is thus entitled to summary judgment on Jones's implied warranty of merchantability claim. *See Jenkins v. Gen. Motors Corp.*, 524 S.E.2d 324, 326 (Ga. Ct. App. 1999) (affirming summary judgment in favor of defendant as to plaintiff's breach of implied warranty of merchantability claim because plaintiff "failed to show any probative evidence that [defendant] was responsible for the [product's] failure"). To be clear, the Court does not hold that Jones's claim fails because she relies upon circumstantial evidence instead of direct evidence; but her claim fails because she has not pointed to sufficient circumstantial evidence to create a genuine fact dispute as to whether the flooring was defective and/or whether the defect caused the problems of which Jones complains.

## II. O.C.G.A. § 11-2-315: Implied Warranty of Fitness for a Particular Purpose

In a contract for the sale of goods, a warranty is implied that the goods will be fit for a particular purpose when "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is

13

relying on the seller's skill or judgment to select or furnish suitable goods." O.C.G.A. § 11-2-315. "A 'particular purpose' . . . envisages a specific use by the buyer which is peculiar to the nature of his business," whereas "the ordinary purposes . . . go to uses which are customarily made of the goods in question." O.C.G.A. § 11-2-315, cmt. 2.

Here, Jones informed a Steller employee that she wanted to purchase Steller's flooring for use in her home. It is undisputed that Steller's flooring is customarily used as flooring in residential homes. Therefore, this sale included an implied warranty of merchantability but not an implied warranty that the product would be suitable for a particular purpose beyond customary use as flooring in a personal residence. Accordingly, Steller's motion for summary judgment on this claim is granted.

**III. Steller's Counterclaim for Defamation/Libel**

The only remaining claim before the Court is Steller's counterclaim for libel under O.C.G.A. § 51-5-1. Because Steller did not allege an amount of damages and there is no other indication that the amount in controversy requirement is satisfied for diversity jurisdiction, the counterclaim does not independently qualify for federal subject matter jurisdiction. Under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original

14

jurisdiction." District courts are encouraged to exercise that discretion "to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Murphy v. City of Aventura*, 383 F. App'x 915, 919 (11th Cir. 2010) (per curiam) (quoting *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004)).

This action was originally filed in state court, and there is nothing to suggest that the state court will be unable to render a fair decision as to Steller's counterclaim under the applicable state law. The Court also finds that neither judicial economy nor fairness dictates a different result. Accordingly, the Court declines to exercise supplemental jurisdiction over Steller's counterclaim and finds that remand of that claim is warranted. *See Cook ex. rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1123 (11th Cir.2005) ("Because this case was originally filed in state court and removed to federal court pursuant to 28 U.S.C. § 1441, if the district court declines to continue to exercise supplemental jurisdiction, [plaintiff's] remaining claim should be remanded to state court.").

CONCLUSION

For the reasons set forth above, the Court grants Steller's Motion for Summary Judgment (ECF No. 19) as to all of Jones's breach of warranty claims. Because Jones's substantive claims fail, her claim for litigation expenses as part of the damages

under O.C.G.A. § 13-6-11 also fails.  Having declined to exercise supplemental jurisdiction over Steller's counterclaim, the Court directs the Clerk to remand that claim to the Superior Court of Clarke County, Georgia for adjudication.

IT IS SO ORDERED, this 1st day of April, 2025.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA